Thank you. I'll take about five minutes to address the issue of the disallowance of the claim sometime with respect to the confirmation of the Chapter 11 plan. With respect to the disallowance of the claim, we assert that the bankruptcy court committed error in not applying these factors in a way that we believe the case law would have required that they be applied. With respect to the four factors of what we all know, I'm going to sort of start out of order. The factor regarding good faith, there really is no dispute here that Mike Flanagan was acting in good faith. These are parties that are litigating, starting state court, wind up in bankruptcy court. That's how you're going to get your claim in the bankruptcy court is filing the proof of claim. The fact that, yes, it was like we acknowledge that, okay, but that is not tantamount to bad faith. That goes to the issue of the excusable neglect. And there was no finding by Judge Saltzman that there was anything done in bad faith. She just didn't think that bad faith would necessarily put us over the edge on the excusable neglect argument. The next factor is, of course, the length of the delay in this. Please understand the following. I was not brought into the case at the very beginning. I get brought into the case after it's been commenced. There apparently has been at least one of the board hearings in the matter. There was a scheduling conference, which is quite common in Chapter 11 conferences, and there was a scheduling order that went out. Now, I was never served with the scheduling order. So when it came out, I didn't receive anything. It is correct, as my colleague, Mr. Goodman, says, that the appellant received it and the to serve you? To serve me? Yes. Your Honor, I would say no, and basically for a very simple reason, which was I wasn't even in the case yet. Sure. So the fact that they didn't give you notice is really neither here nor there, correct? Well, for me, it is in the sense that I, you know, had I received this, we might not be here today. Let me ask you a follow-up question. You find out you're six months late on a claim. You filed a claim. Did you file any sort of motion to say, wow, I realized this is six months late, but can you please allow this claim for the following reasons, Judge? No, I did not. Here's what happened. You left that to the debtor to deal with, correct? You didn't deal with it. Correct. The debtor had filed the first disclosure statement and the proposed plan on May 5th of 2019. I then filed the claim May 29th of 2019, and the debtor filed the first amended disclosure statement. To my point, 24 days elapse between the time that you realize there's a problem here, because you go back and look and realize there was a claims bar date, right? And you're filing a claim and you don't do, you know, what people might expect you to do. You don't bring it to the court's attention and say, can we deal with this? I did not understand, though, that we already were running into the plan and disclosure statement, and I said, I will deal with it. In that realm, they then filed a first amended disclosure statement and first amended plan of reorganization. What did that change? In terms of, well, they're not picking up the claim, there's not going to be any allowance for us, and they're rejecting, that follows up with the objection to my client's proof of claim. So in terms of, that did not stop the proceedings. The proceedings kept going. It didn't cause any prejudice to them. They already had, they filed their first amended disclosure statement and plan after I had filed the claim. I have to disagree with you there. I mean, because your claim basically at least doubled the total universe of unsecured claims. How can that not have an effect on the plan confirmation process? Well, there is still time to go back and recalculate the numbers. Understand that the claim is unfiled by the time they go back and do the first amended disclosure statement and plan of reorganization. In the way it's supposed to be done, anyway, a lot of work has been done before a disclosure statement plan is even filed, and to have, to be at the point where you're ready to go forward with plan confirmation, then all of a sudden, this enormous unsecured claim pops up late. I just don't buy the argument that that doesn't affect anything. Well, it might, but it's not to the point of where it's going to derail the entire proceedings they're on. And so that is with respect to the length of the delay, sure, but with respect to the potential impact, we were still early on in terms of getting plans and disclosure statements out the door. You can amend a plan and disclosure statement two and three times before it gets approved and the plan is confirmed. Sure. I can always pay more. I mean, it's theoretically possible to say, what's the number? Let's just pay more. But I mean, we're dealing with finite resources and you're taking, you know, your theory seems to be they could have paid whatever number I put in there. And this wasn't a liquidated claim in any event. So, you know, you're introducing both a big claim and the need to do an estimation process or something that's going to be very complicated because it was, it's a complicated piece of litigated. So it's huge. Which is why they filed a chapter 11 case. Recall that we, the state court counsel filed a complaint June 5th of 2018, sorry, 2019, and they're in bankruptcy by July 20th of 2019. They weren't interested in litigating this in state court. They were interested in litigating this. Right. But, I mean, that doesn't have anything to do with whether your client's obligated to file a timely claim, right? I mean, even if people whose claims are known get notice and are told file a claim and they still have to file a claim, even if their claims are known, correct? That is correct. But I was responding to Judge Taylor's inquiry with respect to the large amount and the complicated piece of litigation, but it wasn't you, they knew going in, it is the finding of a lawsuit. Also, you hadn't filed a claim for months, right? And aren't they entitled to rely on that and plan accordingly? I'm sorry. I'm sorry. I didn't know. I also knew you hadn't filed a claim for months and aren't they entitled to rely on that and plan accordingly, which is exactly what they did. Well, understand the claim was not filed in the chapter 11 case. Understood. But it was a claim in the individual chapter 7 case. This would not come as a surprise to them by any stretch of the imagination. Okay. Go ahead, Judge Taylor. Can I move you forward to another topic? Your proposal is that your client take payment on a subordinated basis and that would extend the plan from two and a half years to five years. And I guess my first point is, isn't this a five-year plan to begin with? Where does the two and a half years come from? The two and a half years, Your Honor, it comes in, it's the payout to the unsecured, general unsecured creditors. But the plan says that's going to take five years, doesn't it? Or am I just missing something? No, I believe it says we have this two and a half. But we're asking for a subordination to extend it out that way. Okay. So, okay. Let's pass it. The plan says what it says. Maybe I'm misstating it. We could figure that out. But wouldn't it take a lot longer than two and a half years to pay your client $600,000 claim at the roughly $3,000 a month rate specified in the plan? Remember that that figure that we have there is an estimated amount. And so that figure could be much less than the $600,000. In fact, when we look at what they listed the company, my client, for in the individual chapter seven case, it was at $2 million. So $600,000 amount is certainly much less than the $2 million. But that's not my point. My point is that $3,000 a month, which is the monthly plan payment to unsecured creditors, it takes a lot longer than two and a half years to pay the $600,000 amount that your client demanded, right? It would be. But I'm not, I'm estimating, if you will, the claim. I'm not sure that $600,000 would be what would eventually come to us. It could be more. It could be $2 million, right? It could be. But then again, it was, it would be subordinated. Okay. So let's talk about that. What's the legal basis for subordinating a late claim? In a chapter 11 case. Well, in this particular case, the approach I took was, I did not want to attempt to leap ahead of other unsecured creditors or any of that. I didn't want to prejudice them. And so I said, allow the claim to subordinate the claim. Okay. My question is, I understand the practical notion there, but what's the legal basis for subordinating a claim in a chapter 11 case because it's filed late? I would just say, this is a matter of equity, Your Honor. You've got, it is a late file claim. I think that we could meet the pioneer factors. And even if you say, we're not going to let you have a time, a deemed time to file them at the same level as the other unsecured claims, we'll let you in, but you got to stay at the back of the line. Okay. Well, we've taken you inside your five minutes, so. Let's just get ready to say. And in terms of the chapter 11 plan itself, I was greatly concerned by some of the financial projections there. If you look in particular on the first limited plan of reorganization, exhibit B, it is replete with expense line items that do not change throughout the course of more than a year, more than two years. Okay. Well, I have to ask you about that too, because you're now saying that the plan projections are unrealistic, but on the other hand, you just told us the plan should be extended for a period of years. How can both of those things be correct? Well, what happens is when I raised the two issues, one was the allowance of the claim. The other one was the issue of the plan. I said, even if the claim is not allowed, the claim wasn't allowed by the followers and we wouldn't have anything in terms of the plan, but if the claim is allowed, our concerns would be this. So we see, for example, automobile expenses similarly, month after month after month, medical expenses, medical insurance expenses, workers' health insurance expenses, maintenance expenses. Everything is the same. In fact, the debtor tells us that they are looking to keep constant sales. They don't see increases in sales from July of 2019 to June of 2021. So which is it? The plan payments are too low or too high? Which do you think it is? Well, I think the plan payments are too low. The plan payments are too low. And I think in Chapter 11 practice, as we all know, look, it's tough because you're projecting out, but by the same token, you have to have assumptions. Assumptions are not correct or incorrect. They're either reasonable or unreasonable. My pitch to you is I think the assumptions here are unreasonable. It's unreasonable to assume that medical liability insurance premiums are not going to go up within a year. Same with automobile expense, maintenance, gasoline, all of these items, but they're going to be static. Let me just point out to you, you're down to two minutes. If you want to reserve some time, you can stop now. Thank you. All right, Mr. Goodman. Yes, thank you, Your Honors. The complaint was filed in the state court in June of 2018. He did file the bankruptcy in July of 2018. The notice of our date was mailed out in September of 2018, November 15th as the bar date. I communicated directly with Mr. Piercey, who was the only one that I knew because he was a state lawyer. The client was served. I believe Mr. Fernandez didn't hear about March 14th, but he did state in his declaration in opposition to our objections to the claim that he was aware of our date. Filed it in May, and then as a question, nothing happened to the data file, its motion to the claim in July. The court sustained based upon the factors of Pioneer. It wasn't until the end of that hearing, which Mr. Fernandez orally, it wasn't in any part of his written papers, said, well, if you're not going to allow it, at least subordinate it, and the bank was in agreement with his opinion. The order was entered, and then a motion for reconsideration was filed in which the subordination issue was again raised without authority, just that it should be subordinated over time. I have a copy of the plan that sets forth general and secured creditors in class 22, and specifically says the cash distribution to general and secured creditors shall be paid in all over a period of 60 months, and are paying the sum of $29.8935 per month. Claims of insiders, which is Dean Jacoby, Jennifer Jacoby, have like Mr. Jacoby about $360,000, and Mr. Jacoby about $50,000 will not be paid until after payments in full is made to non-insider general and secured creditors, and that was ultimately, that didn't change, that was ultimately the plan that was confirmed by the court. There was no objection in that context by the appellant at confirmation. There were basically three objections. One was separate classification, which basically misread the plan. We attached the exhibit to the plan, which listed each creditor, how much they would get, et cetera. The unsecured creditors, the general and secured creditors were under class 22 and listed the names of about 10 of them, and how much they were owed, and how much they would get was the interest. And then we listed, because we had named all the employees, because of the nature of the lawsuit, we had 12 clauses of action against the debtor, against Mr. Jacoby, and against Mr. Eric Jacoby, who's not an office director or shareholder, but founded the company and then turned it over to Ian Jacoby back in 2009. We listed all the employees next to Mr. Williams. We indicated that he had a claim for $600,000 based on late filed proof of claim, but he would receive zero because of the late filed proof of claim. That was one of the objections. The other objection was good faith. You're paying everybody in full, it's 100% planned. And so the court overruled the objection to the good faith and feasibility. The cars, my client, because of the nature of his business and doing a lot of testing in HVAC situations, have a lot of employees that are on the road, they rent a lot of cars, and those are long-term leases of lives. And so the amount of those payments don't change for a long time. They have, the plan was confirmed on October 29, 2019. I believe they made, the debtor started making their first payment to unsecured creditors in October. They have continued, I believe, to do it. Let me stop you for a second and ask you a question. What would be the practical impact on the bankruptcy case if we were to reverse either the plan confirmation order or the claim disallowance order? What would happen after that, do you think? What would happen is the debtor would most likely have to seek to employ a special litigation counsel as expertise in employment law, because every one of the 12 causes of action are based upon California statute, employment statute. You would have to then figure out where to litigate or perhaps estimate the claim. I know bankruptcy judges tend not to like litigating, you know, trying cases dealing with state court issues. So we could, we might have to go back to the New York County Superior Court where this was filed and, unfortunately, in nature of circumstances, they are just getting back on their feet. In fact, I have a case where there was a trial date, which has been vacated and turned into a trial setting conference. But it's your view that you couldn't really propose a plan until you have the claim liquidated, is that it? Yes, we understood it's contingent disputed and liquidated. At no time did Mr. Piercy, who's a state court lawyer, Mr. Fernandez, after he came in, seek relief from the automatic state and go back and litigate in the New York County Superior Court. And this goes back to July of 2018 when there wouldn't have been an issue. I've attended, you know, four or five, six tax conferences in the state court, and I think there's another one set for... Okay, so I think we get the point that you'd be stuck for some indefinite and fairly long period of time. After that, let's suppose the claim gets liquidated at some large amount, let's just say $600,000, then what? Then we're going to have to go back with the numbers and most likely, you know, file, you know, seek to modify the plan and changing the numbers with regard to how much creditors, including Mr. Williams, got paid, unless, I guess, we were going to subordinate him until, you know, until after the insiders get paid. But that's arguably, you know, 10 years from now. So, you know, you have creditors who voted, you have a secured creditor and insured accounting credit union, who, by the way, dismissed the non-dischargeability case against my client almost two years ago. And so, there's only the one by Mr. Williams, Mr. Jacoby's case, but we would have to modify it and figure out how much we could pay creditors, you know, whether we need to see if we can get money back or stop paying them for a while. But are you saying that it would be impossible to go forward to confirm a plan if this claim got liquidated in some large amount, or is it possible? I'm not saying. I guess I would use the word possible, improbable, you know, depending on the number. I mean, if we were to be successful, you know, we would then have substantially more administrative fees that we have to deal with. And we'd have to look at what the total number was. You know, without telling us out of school, we tried to mediate it and it was so far apart during the, you know, it didn't last that long. So, it would be difficult to, you know, to modify the plan certainly with paying everyone a hundred cents per dollar, that number would have to change. Thank you. I just wanted to make sure that I liquidated. So, the other thing is with what the objections to the plan, while there were three objections at the time of confirmation on appeal, there is only really one argument and that's separate classification, which wasn't raised in the trial court because, you know, Mr. Williams' claim was disallowed. But, you know, in appellant's brief about page 13, they talk about, and it's really a very short argument, that there wasn't a separate classification or a claim rather than the mistake that was made for the bankruptcy court. So, that to me is a new argument that was made. And again, it seemed to me as I read these papers several times that really what, you know, allowed so that Williams can get, you know, some sort of payment out of the debt around chapter 11, you know, perhaps because, you know, he wasn't involved in the failure to file a timely proof of claim and or the elders take any affirmative steps after, you know, filing it in May to seek to deem it timely or call me and seek if we'd stipulate and instead of waiting for the debtor to file its motion objecting to the claim in July, sustained and then filed the motion consideration which rehashed pioneer factors and then, you know, for the first time other than the could be subordinating, you know, the claim. Fortunately, the facts that would be on the relied on two and a half years or just unless the court has any questions. Thank you very much. Thank you very much. All right, Mr. Fernandez, let's see how much time you have. You have one minute and 53 seconds to do rebuttal. Thank you again. With respect to the issue of if you send us back what happens plan payments continue going. We've never asked those be stopped. We've never asked that anything be taken back. Number one. Number two is I don't think we'd be going back to Ventura County Superior Court. The reason being that we have the 523-86 against Mr. Jacobi in the bankruptcy court before it starts to tie. And so we might just focus that way there. However, in the issue of the administrative expenses, remember that they went ahead and they filed the chapter 11 bankruptcy. They were going to expend the money whether it was in the return to have a superior court or in the bankruptcy court. That's not something new that's coming on. And in terms of the pioneer factors, I again would reiterate that yes, what is the calendar mistake? I did put a case law in there from the ninth circuit to be Pinkei versus Andrews case regarding the late final notice of appeal. And so prejudice to the debtor, there's always a risk of that. But I think that our approach to it has been let's continue to plan performance. Do you have any questions? I have two things I just want to say. First of all, Mr. Fernandez, I do appreciate the way that you've taken responsibility for what happened here. That's the right thing to do. I do appreciate that. And Mr. Goodman, I also can't help but notice that it would be probably in Mr. Jacobi's interest to have this claim allowed in the corporate case because of the potential non-dischargeability of that debt. And I appreciate that you and he have fulfilled your fiduciary duty in putting the interests of the company ahead of his personal interests. So that's just my statement. Thanks to both. Thank you. If I can respond briefly to that. Mr. Jacobi is in a chapter seven that has been discharged. He's received his discharge. But there's the pending actions. The pending non-dischargeability actions under 523-86. Right. They've got to prove both malicious and willful actions. And that's not before us. He was complimenting you. Oh, OK. I'm sorry. I'm sorry. Not critical of trying to say you're doing the right thing in this case. Because many people would have said, take your claim against the company. Let the company pay as much. Get the monkey off my back. And he hasn't. I apologize and thank you. Quite all right. Thank you. Thank you for your good argument. This matter will be deemed submitted and we will be in recess. Thank you very much. Thank you very much. This session of the United States Bankruptcy Appellate Panel of the Ninth Circuit is now adjourned.
judges: Taylor, Faris, Lafferty